and I work for the Federal Public Defender. I will, of course, be pleased to talk about anything the Court deems important, but my goal today is to cover at least the first and fourth arguments in the initial brief and, time permitting, the third. And I'd actually like to begin with the fourth argument, which is the sentencing claim, because I think it's clear, and given the grouping rules in this case, the effect on the sentence as it would to vacate any one count of conviction. Mr. McLaughlin received a two-level enhancement on counts 5 and 6 here for acting as a leader organizer. I submit to the Court that the evidence in support of that enhancement was clearly inadequate, at least as to count 6, and if it is removed from either count, the guideline range will be reduced by 20 months for every count. The government has cited two pieces of evidence in support of the enhancement, and I don't think you could find any more if you scoured the record, and these two pieces of evidence are very, very slender reads for this enhancement. First, the government cites the fact that the defendant told his driver where to go in the count to get to the site of the count 5 robbery. This is not really acting as a leader. It is about as much leadership as I hope to show my Uber driver on the way home. It isn't really directing another participant so much as it is giving directions to somebody. The record is... But wouldn't that be dependent on what the driver knew at the time he directed? Your Uber driver doesn't know that when he drops you off at the grocery store, what you're going to go in there and do, whereas in this case, wouldn't it be relative to the purpose of the trip? It would be relevant to the question of whether or not the driver is a participant. But there's really two questions here, and one is, is Ms. Calton a participant? And then the other question is, is he showing leadership? And so the defendant has been to the site of the count 5 robbery before. It was the site of the count 3 robbery, unfortunately. And so he knows where this thing is giving her directions to the spot or choosing the location. Even if we were to call that leadership sufficient to trigger the enhancement, it has to be seen broadly in the context of the entire excursion. This entire excursion involved trips to four banks, to two motels, to Waco and back, and to the houses of two relatives of the participants. And he gave the driver money. And he gave the driver money because he had the money to begin with. He went in and got the money from the bank. Went in the bank and got it. Went in the bank and got it. So do you think, are you inferring that maybe Ms. Calton thought he was cashing a check in there as opposed to robbing the bank? What are you saying? Well, I am saying that. But that question about whether, and I'm not merely, it's not merely my factual assertion there. That's the limit of the Court's finding. That's the limit of the Court's finding on page 953 and 954. You know, he says, one of the reasons that I went ahead in the direction that I did was that while she was saying she wasn't involved from all the circumstances that you look at, it would be at least willful blindness, I thought, on her part to say that she didn't know what was going on, and maybe even more than that, that she actually did know. You would think a normal, rational person would know that something nefarious was going on and probably even specific like there was bank robbery. So this factual finding stops short in two ways of what's necessary for the enhancement. First, it doesn't say that she actually knows. It says a rational person would know. So it stops short of actual subjective knowledge. And second of all, he says it stops short of saying that she knew that it was robbery. And, in fact, she told the FBI that she knew it was something illegal but not that she knew that it was robbery. So those are both serious deficiencies as to the question of whether she's a participant. The question of whether she has to know that it's robbery, I think, bends in my favor and Mr. McLaughlin's favor based on the clear language of the enhancement. The enhancement says that a person is a participant if they are criminally responsible for the commission of the offense. The definite article V there limits us to the statute of conviction there. She has to know not merely that it is something illegal but that it is bank robbery based on the guidelines use of the word V there, and that is because They go to a bank, don't they? I mean, she didn't go in there and sell drugs or something. I mean, they went to a bank and he came out with the money. I mean, at some point subjectivity has to give way to the judge's finding. It's a finding, isn't it, of a preponderance of the evidence at sentencing that the judge can find relevant facts? Two points about that. It is, but that's not the finding that the Court made here. The Court said maybe bank robbery or but certainly something. And second of all, it's not at all implausible that you could go into a bank and commit check fraud or something else that would get you the money there. Nothing about going into a bank and coming out with money, even if you assume that it's illegal and the evidence certainly supports that because he's getting more than a driver would, tells us that it's accomplished by force or intimidation. But even putting all that aside, putting aside the question of whether the participation that, excuse me, whether she was a participant, there's still inadequate evidence of leadership here. There's still inadequate, very, very slender evidence that he's calling shots or telling anybody what to do here. He goes in and he gets the money. He has the money first. So the fact that he's, that it's arrested in his, in his possession doesn't tell us who's ultimately going to get the money. And in fact, the evidence is really rather to the contrary to the suggestion that he's ultimately going to get all of the money that's found with his possessions. And the reason that we know that is because Marquita Glover, all parties agree, is trying to bail out her boyfriend from jail that day. And she is found arrested with $20. Now, inflation as it is, $20 isn't going to bail anybody out of jail. So the final cut, the final distributions of that money has clearly not been made at the time of the arrest. So we really don't know anything about who has access to, to, who has the claimed right to the greater share of money. All we know is at best who's in immediate possession of that money. And we don't really know that without any ambiguity because the people in immediate possession of the money, one would think are the people in the motel with the money and not the guy down the street at the convenience store. He isn't even arrested in the motel where the money is. So in one sense, he's in immediate possession of the money because it's with his possessions. But in another sense, he's not even at the scene where the money is. And finally, I want to call the Court's attentions to notes 2 and 4, which, which provide, which really create significant doubt about whether or not the distribution of the assets or a claimed right to the distribution of the assets can be independently sufficient in order to get the, the role enhancement. Note 2 says that you have to direct a participant in order to get the, the leader organizer enhancement. And control over the assets may be a basis for upward departure. So, so this really isn't independently sufficient evidence under note 2. And note 4, which does mention the claimed right to the share of the assets, says that it is something to consider when deciding between different kinds of enhancements. Two, two points, three points, four points there, but not, it doesn't say to use it to determine whether the defendant gets that enhancement at all. And indeed, note 2 is, is to the contrary of that proposition. So if the Court doesn't have questions about the fourth issue, I'd like to move on to the first. Your Honor, there's only one set of elements to the bank robbery statute. There's not one set of elements that we use in jury instructions and another one that we use to decide the categorical approach. And Brewer told us that bank robbery triggers 4B1.2 because it has the threatened use of force. And all that Mr. McLaughlin wanted here was for the jury to be instructed that the, to the direct holding of what Brewer's told us, which is that bank robbery requires the threatened use of force. The government — I don't think Brewer said that. That bank robbery requires at a minimum the threatened use of force. That, I think that's — Or intimidation or whatever the other phrase is in the statute. It's a either-or. You don't have to — you don't have to have an explicit threat of force. You don't have to have an explicit threat of force. But Brewer does tell us that it requires at least an implicit threat of force. And that's all that — and if it hadn't said it requires at least a threatened use of force, there's no way it could have qualified under 4B1.2a, which requires either the use of force, the attempted use of force, or the threatened use of force, as we're all extremely familiar with from our categorical approach litigation in that case. So the government's argument about the insufficiency or the inaccuracy of Mr. McLaughlin's jury instruction is essentially that it does — it's not explicit about the fact that the threat of force may be implicit. But it doesn't say that it has to be explicit. It just said there has to be at least a threatened use of force in order to sustain the conviction under intimidation. And Brewer directly supports that principle. Do you believe Brewer impacts the pattern jury instruction? As I understand it, the district judge used the pattern instruction. Isn't that correct? Yes. I just had a letter. Do you believe that Brewer changes the pattern instruction in some way, that the judge should have modified the pattern instruction? Yes, but we don't need to reach that. I think it does. Upon the defendant's request, the defendant ought to be entitled to an instruction that the threatened use of force is required under Brewer. And that's not because it's changed the law. It's because it's amplified a certain proposition of law that hadn't been really discussed before Brewer. That doesn't have to be in every case, but upon the defendant's request and in a case where you have a note that is this innocuous, this is bank robber, give me 20s, 50s, 100s, if the defendant had gone in and, you know, taken the place over and displayed a weapon and made very explicit ---- Brewer is a sentencing case, isn't it? Brewer is. I understand your position is it makes no difference. But Brewer is a sentencing case. It does not in any way suggest that the elements of the crime per the statute are changed, does it? The elements that are set forth in the statute directly in the black letter. It is a sentencing case. It doesn't suggest that they are changed, but it does construe those elements. It is about the elements of bank robbery. And if we ---- the Court is to be consistent, the elements of bank robbery are the same for the categorical approach as they are for jury instructions. The point of the categorical approach is that the defendant is held accountable only for the elements of the offense. So there's also ---- the government has also argued that if the ---- this was communicated, that the defendant's jury instruction was communicated by the pattern jury instruction which says that the ---- that he has to put another in fear. But Brewer communicates a little bit more than that, and so did the defendant's requested instruction. For one thing, a threat requires something more than putting another in fear. It requires a ---- the defendant's intent to put another in fear. The only reference to intent in the jury instruction is that it says that the defendant has to intentionally obtain property. It doesn't say that the defendant's causation of fear in another must be intentional. So a threat is something more than putting another in fear. It is an act of communication, whereas putting another in fear is causing a sensation in another person. Those are, in the case of a robbery, which is on the facts that are as innocuous at least as Count 5 and 6, those are significant jury questions that the defendant should have been allowed to litigate. And finally, I want to point out that just to point out to the Court, it doesn't need to modify the pattern jury instruction or say that that should be modified in order to find for the defendant in this case, because in this case, this very unique case, we had this exercise of the jury crossing out by force themselves in the pattern jury instruction. And a reasonable jury asked to cross out the words take money by force could think that that also means that the defendant doesn't have to take money by threatening force. Acting by force to a reasonable jury, not to us because of the candidate against us because they've been through that practice. Thank you. Thank you, sir. We have some time on the vote. Mr. Magliolo? Yes, Your Honor. Thank you, Judge Dennis, and may it please the Court. Joe Magliolo for the United States. This Court should affirm the district court's sentence and the jury's verdict in all respects. It should first find that the district court did not clearly err when applying the two-level enhancement to Mr. McLaughlin's sentence for acting as a leader or organizer with respect to Ms. Calton on counts five and six. And alternatively, not alternatively, but additionally, the Court should also find that the district court did not err by using this Court's pattern jury instruction when defining bank robbery by intimidation for the jury rather than use Mr. McLaughlin's proposed and incorrect instruction. And I'll start now where Mr. McLaughlin started with the sentencing enhancement issue. And I believe my friend, Mr. Page, has passed over, unfortunately, a few important facts here. First, this is a clear error standard review. It's highly deferential to the district court's finding on this respect. And when the Court is assessing whether or not somebody is criminally responsible for an offense, this Court in the Glenzie case said that all that must be shown is that the person participated knowingly in some part of the criminal enterprise. And the evidence before the Court demonstrates this in droves. Ms. Calton testified that Mr. McLaughlin directed her to the fifth bank, which he robbed. She also drove him to the sixth bank, which she robbed. She knew he went into the bank carrying a white envelope. And she also knew, based on interviews with the FBI, that he was doing something illegal to obtain the money. But she didn't exactly say what. So given this low standard that the Court utilized here, and based on the clear error standard of review, I think it is clear that the district court did not clearly err on this front. Additionally, Was she ever charged with any, and certainly not as a co-conspirator in this case, but with a misprision or anything? No, Your Honor. Ms. Calton was not charged. Okay. But I think in terms of passing along the money, that's another aspect that the leader-organizer enhancement is appropriate. And in a case where the leader-organizer keeps the lion's share of the money, that's another tick in the favor of finding that they were a leader-organizer. And on the day of that robbery, on May 27, 2016, an investigator testified that Mr. McLaughlin had robbed approximately $4,200 between the two first convenience banks he robbed. And among his possessions in the hotel room, which he rented that day, there was found about $3,200, which demonstrates that he kept the lion's share of the money, but the offense had much less. So I'd like to turn now to the jury instruction issue. It is well settled in this court that a district court does not err when it charges the jury based on this court's pattern jury instruction, so long as that instruction correctly states the law. And Judge Englehardt, as you previously referenced, the district court took this circuit's pattern jury instruction, Section 2.80a, word for word, which defines when it says or does something in such a way that a person of ordinary sensibilities would be fearful of bodily harm. The district court, again, took that instruction word for word and provided it to the jury. Now, it's important to remember where this instruction comes from to explain why it was appropriately used here. The basis for this instruction came from the 1987 decision in the United States versus Higdon. In that case, the court was faced with a decision much like it's faced now, because Mr. Higdon, in that case, had robbed a bank without an express threat, and he argued to the court that his conviction was insufficient because he had not used an express threat, either an express verbal threat of bodily harm or an express threat used by threateningly displaying a weapon. And this court disagreed, and it found that bank robbery by intimidation is accomplished when a person, a defendant, puts an ordinary and reasonable victim in fear of bodily harm as a result of the defendant's actions. So based on this instruction, the court found in subsequent cases, United States versus McCarty and United States versus Baker, both of which are cited in this court's pattern jury instruction, that similar types of activities suffice to sustain a bank robbery by intimidation case. In particular, in the McCarty case, just like here, a person walked into a bank with a robbery note, wearing a disguise. The note said something to the effect of, Be calm, this is a robbery, and this court found that that was sufficient. The Higdon case, the McCarty case, the Baker case, none of these cases have been brought to the Supreme Court or superseded by congressional legislation. So as a result, this remains good law. Now, Mr. McLaughlin would have this court believe that the United States versus Brewer case represents some sort of sea change when it comes to charging and proving a bank robbery by intimidation case. But all that happened in the Brewer case was that this court acknowledged that a bank robbery by intimidation necessarily meets the crime of violence standard because when someone accomplishes a bank robbery by intimidation by putting a person, an ordinary and reasonable person, in fear, it used language in the Brewer case much like the court used in the Higdon case and much like language which is already in the pattern jury instruction. If someone accomplishes a bank robbery by intimidation, then they necessarily have used an implicit threat of force. But Mr. McLaughlin would take this crime of violence standard and invert it and put it in place of the time-tested narrow language which this court has utilized in its pattern jury instructions. And this is wrong for two specific reasons. And Judge Clement, I think you alluded to one of these earlier. Mr. McLaughlin's proposed instruction would require the government to prove a bank robbery by intimidation by either the use of force or the threatened use of force. The use of force is plainly an inappropriate language to use in this sort of instruction because bank robbery under 2113 can be accomplished in two ways. One way is by force and violence, and another way is by intimidation. Simple principles of statutory construction indicate that bank robbery by intimidation does not require the use of force. So on that front alone, his proposed instruction was flatly incorrect. And again, to have an unqualified threat of violence I think still overstates what the government is required to prove. In the Higdon case, this court rejected Mr. Higdon's argument that an express threat of bodily injury is required to prove bank robbery by intimidation. You don't think Brewer has any impact whatsoever on the pattern instruction? No, Your Honor, it does not. Because I think what Brewer acknowledged is that when somebody accomplishes a threat of force, but that language is already covered in the pattern jury instructions. So I don't think Brewer has any impact on the instructions. Let me ask you about the search of the envelope. Is it the government's position that that was a field search or an inventory search? It was both, Your Honor. I believe it was a search incident to the lawful arrest of Mr. McLaughlin. Even though he was handcuffed? Correct, Your Honor. And I think the important distinction here is in that situation there's two areas that an officer is permitted to search during a lawful search incident to arrest. One area is the area of the person and one area is the area nearby an arrestee. Now, whether or not a person is handcuffed has bearing on whether or not they can reach something within their reaching distance in that second category of cases. What the Robinson decision held and what this court's decision in Johnson, to which we cite in our brief, held is that if somebody is carrying a container at the time of their arrest, the officer is absolutely entitled to inspect the contents of that container without regard necessarily to the distance of the arrestee to that container. Now, there is obviously a few boundaries on this. The Fourth Amendment's touchstone of reasonableness is a boundary, and the Supreme Court in Chadwick indicated that the search can't take place in a remote time or place from the site of the arrest, but given that the arrest took place on the scene of the arrest, within five minutes of the arrest, it was certainly appropriate under the rights. Well, material to that, what kind of envelope are we talking about? I assume when you say that there's a potential of a weapon or something in it, we're not talking about the kind of envelope we get in our mailboxes, are we? Are we talking about some type of FedEx or accordion container or something? That's exactly right. That's exactly right. It's not clear in the briefs to me, and I kept reading the word envelope, and it occurred to me that you're arguing that there's a potential, if the defendant had access to this envelope, that the law enforcement might be at some risk. You're absolutely right, Your Honor, and I should have made it clear in the brief, but just to give it some perspective, this is a white envelope that is so big that a FedEx letter envelope could fit inside the envelope without it being folded. So there's pictures of it in the record, and if the court is interested, I would urge the court to look at those because it gives a better perspective than perhaps my brief did of how big it was. And it was big enough that Officer Conner, who is a 25-year officer of the Fort Worth Police Department, believed it was big enough to carry a firearm, a blade, or some other type of contraband, and I don't believe that is something that's true. Not only big enough, but also wide enough, almost. I mean, are we talking about almost like a box of some sort? Not quite a box, Your Honor. It's still a paper envelope, but I think it is expansive enough that it could hold a great deal of paper, so big enough to hold a firearm in Officer Conner's view. All right. Would you go back to finish answering the question as to why the government thinks it's also an inventory search? Sure, Your Honor. Officer Conner testified on pages 355 and 356 of the record that the Fort Worth Police Department has a standardized inventory policy, that in every case they are required to search the personal property of an arrestee. They have no discretion to refuse to do so. And on 355 and 356, Officer Conner testified that had she failed to inventory the property of Mr. McLaughlin, then she would have been violating the police department's general orders. By inventory, did she make a listing of what was in the envelope? She did not, Your Honor. Okay. So why is that different than a field search? Was the inventory search done at the same place and time as the field search, or was it a later time, maybe at the police station or something? It was done at the same time, and I appreciate that the facts on this are somewhat conflated and not particularly clear from the record. But I think based on her testimony that both the Fort Worth Police Department requires an inventory search in every case of the personal property of an arrestee. But wouldn't that require a listing, an identification of what was inventoried? Your Honor, I don't believe the Fifth Circuit has required a listing of inventory What does the police department require? I don't see the difference between a field search and inventory search if the inventory search happens at the same time and place as the field search. What's the difference? I think, I mean, as a practical matter here, the difference is not significant. I think, legally speaking, an inventory search can take place, you know, at the station house. It can take place more remotely and timely. But in this case? In this case, I agree that there's not a significant practical difference between the inventory search and the search incident to arrest. And I will concede, I think the search incident to arrest argument in this case is stronger than the inventory search, but I think both can independently support the officers. But you don't need both? No, Your Honor. Okay. If it's a search incident to arrest, we do have the testimony of the officer, Officer Connor, who said she did not feel threatened at the time of the search. So that's one thing. And, of course, another reason would be the potentiality of losing evidence. But in this case, I guess I'm asking you because I'm hard-pressed to see the reason why evidence would be lost. If the scene is secure, why would there be any type of imperative to conduct a warrantless search of an envelope if there's no threat to the officer's safety and there's no fear that evidence could be lost? Judge Englehart, I think the Robinson case that the Supreme Court issued in 1973 is instructive on both of the points you raised. First of all, the court in Robinson made clear that the officer's subjective fear or lack of subjective fear is not controlling in terms of whether or not they're permitted to search a container that's found in the course of a search incident to arrest. And secondly, I think another thing that the Robinson court made clear is that in the course of a search incident to arrest, an officer is necessarily going to have to make quick ad hoc determinations and instructed courts, I think, going forward that they shouldn't necessarily engage in a step-by-step review. I think, of course, bounded by reasonableness, but the court is not necessarily supposed to engage in a step-by-step review. I do know that Officer Conner testified at the suppression hearing that it was a windy night, and so I think that was the reason that she did not extract certain pieces of evidence from the envelope and left them inside because she had concern that if she did pull something out, it could blow away. So that's another independent reason, I think, for what she did. I'd like to also point out, given the focus on the Fourth Amendment issue, even if this court finds that the district court should have granted the motion to suppress, and that's only assuming arguendo because I think the district court correctly denied the motion to suppress, but even if it did, there's an overwhelming amount of evidence against Mr. McLaughlin, even setting aside the robbery note. There's the general evidence. One woman testified that Mr. McLaughlin admitted to her his M.O. when he robbed banks. He would wear a disguise. He would walk in. He would pull a note out, and he would hand it to the teller. And then after Mr. McLaughlin was arrested, he was arrested via a criminal complaint, and the officer who swore out the affidavit supporting that complaint, Officer Scott Thompson, he testified that in the affidavit he indicated that the surgical mask Mr. McLaughlin wore was white. And as I think Mr. Officer Thompson was transporting Mr. McLaughlin to the bank, I'm sorry, to the court, for a court proceeding, Mr. McLaughlin unprompted told Officer Thompson that mask was blue. It wasn't white. Officer Thompson went back, reviewed the footage, and found, lo and behold, Mr. McLaughlin was exactly right. He admitted that he wore a blue mask, just as you can see in the robbery footage. Additionally, Mr. McLaughlin admitted to Officer Thompson that he used the same robbery note in the course of each robbery. Now, with respect to each individual robbery, there's a tremendous amount of evidence tying Mr. McLaughlin to them as well. With respect to Counts 3 and Counts 4, Mr. McLaughlin wore a very distinct disguise to accomplish each robbery. He had a yellow construction vest, and all this is viewable in the pictures that are exhibits in the record. He had a distinct yellow construction vest. He wore a pair of black sunglasses, and he had a black hat with a distinct red logo. After the Count 3 robbery, a car matching the description of Mr. McLaughlin's car was found. After the Count 4 robbery, the bank teller smartly activated the GPS device, which tracked where that money was going. Officers responded to that and went to the site of the GPS location, finding Mr. McLaughlin's car in the area. He engaged in two high-speed chases that day, and after he abandoned that car later that night on May 20, 2016, the officers found within his car that yellow construction vest, the black sunglasses, and the black hat with the red logo, just as he was wearing in Counts 3 and Counts 4. And weren't there two chases? Correct, Your Honor. And one of those chases, wasn't a gun thrown out? That's exactly right. Was it recovered by the police? The gun was recovered. Did it have prints? It did not have prints, Your Honor. With respect to the Counts 5 and 6 robbery, Mr. McLaughlin went into the bank without the precise disguise he was wearing before, but he was wearing a distinct pair of black eyeglasses with an emblem on the side and a gray New York Yankees cap. And it should be noted, it's much easier to see that it is Mr. McLaughlin committing those robberies, but he walks into the bank with a white envelope that Ms. Colton said he was carrying as she drove him to the site of those two robberies on May 27, 2016. He accomplishes the robberies, and then when he is arrested later that night, he is found in the gray New York Yankees cap with a pair of black reading glasses. And as Officer Connor testified, the exact clothing he was wearing at the time he was arrested. That, taken together with the fact that $3,200 of the $4,200 that was stolen that day was found among his possessions in nights in room 112, the motel room he rented, demonstrates that beyond a reasonable doubt, even setting this robbery note aside, Mr. McLaughlin was guilty beyond a reasonable doubt. If the Court has no further questions, I will cede the balance of my time. Were all five of these robberies in Fort Worth? There were six robberies, Your Honor, and I believe they were all in the Tarrant County area. I think there may have been one that was in Grand Prairie, but they were all in the same western part of the DFW metroplex. I couldn't tell. Thank you. Thank you, Your Honor. Thank you, sir. Mr. Page, you have five minutes on rebuttal. Thank you. I want to make sure I'm coloring within the lines here. My colleague discussed the Fourth Amendment issues, and so I'd like to speak in rebuttal for that. I didn't cover it in the first one, but as I understand, a rebuttal would permit me to do that. If that's not the Court's view, please set it straight. Judge Englehart, the exhibits are in the brief. There's a picture of them in the brief. They're on page 1156 of the brief, and they really speak for themselves. It's not at all an accordion envelope or anything like a box. It is like a letter you would get in the mail. It's certainly large, but it isn't the kind of thing that you could look into and see without manipulating any papers, I don't think. On top of that, there is an envelope within the envelope, and the robbery note's within that. So we are talking about really a pretty significant manipulation of the pages in order to bring the robbery note into view. To Judge Clement's questions, I think that a search cannot be both a search incident to arrest and an inventory. The reason for that is that, unlike in other areas of the Fourth Amendment, the subjective And so the actual subjective intent of the officer must be to perform an inventory and to comply with inventory policy. And the clear record evidence here is that the intent of the officer here was to perform a search incident to arrest. The most that the government could make of the inventory search here is to use it as a basis of inevitable discovery. So the most they could say is that an inventory search would have been performed even if the illegal search incident to arrest hadn't been performed here. But then, at that point, we start to look at the scope of the inventory policy, and there isn't anything in the inventory policy which suggests that the officer could read the defendant's medical records in a prominently marked medical record envelope, only that they could perform the kind of search that you would need to exclude contrabands or weapons. There weren't any medical records, correct? There were. There were, yes. I thought it was just marked medical records, but there weren't any in there. No, I believe there were. There were medical records in that, and there was certainly the birth certificate, and the record will speak for itself on that, but it wasn't heavily litigated. But I think that there were some medical records in there. But the bank note was in the FedEx envelope that was in the letter envelope. Right. I think the government sort of backed off of the inventory search, so you don't need to worry about that. So here's why it's beyond the scope of a proper search that's into arrest. Pages 39 through 41 of the initial brief make quite clear it's not merely that the officer was not in subjective fear of him acquiring the envelope or for her safety at the time. It's that she had removed properly, had removed it from his reaching distance about that. There are five passages on there that make that point quite clear, that he was not getting to that envelope at the time. So it's not merely the question of whether the officer feared for her safety, it's whether objectively there was any reason to think that this was within lunging distance, and it wasn't. And Gant on this point is very helpful to Mr. McLaughlin because it makes clear that an object might be properly subject to a search incident to arrest at one moment, i.e. when the defendant's in the car or here within reaching distance, and then the proper scope of a search incident to arrest might change once the defendant is removed from reaching distance from that situation. So I think that's precisely the situation we have here. As to my colleague's discussion of harm, the defendant's confessions to Agent Thompson that the mask was blue, not white, might be helpful to the government on counts 3 and 4. There are very little help to the government on counts 5 and 6 where there was no mask used. The mask was recovered in the car after count 4, and so I don't think there's any help there. Him saying I used the same note in every robbery, you know, that tells the jury that there's more than one robbery. It doesn't tell them that there were four robberies. And in any case, it probably is a product of the note being seized in the first place. And the text of that note matches exactly the text that was described by the tellers in counts 5 and 6. The only real corroboration on counts 5 and 6 is Ms. Colton, who is an interested witness in the hat, but they couldn't exclude that there was another person who left before the arrest. So I think it's clearly harmful on counts 5 and 6. Thank you. Thank you, sir. We'll call the second case for today.